**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| TONY R. WHISENANT, on behalf of himself and all others similarly situated, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. CIV-15-81-M ) |
| SHERIDAN PRODUCTION COMPANY, LLC, | ) ) ) ) |
| Defendant. | ) |

## ORDER

Before the Court are plaintiff's Motion to Remand and Brief in Support, filed February 26, 2015, and plaintiff's Amended Motion for Remand and Brief in Support (collectively, plaintiff's "Motion to Remand"), filed March 03, 2015. On April 02, 2015, defendant filed a response, and on March 18, 2015, plaintiff filed his reply. Based upon the parties' submissions, the Court makes its determination.

I.  Introduction

On December 16, 2014, plaintiff filed his Class Action Petition, on behalf of himself and the class of all others persons similarly situated, in the District Court of Beaver County, Oklahoma. Plaintiff bases his claim on defendant's prior underpayment or non-payment of royalties owed to plaintiff on natural gas and/or constitutes of the gas stream produced from wells in Beaver County, Oklahoma. Plaintiff alleges that defendant, who owned a part of the working interest in and paid royalty to plaintiff on the wells, breached the implied covenant of the leases between the parties by its action and/or inaction. Plaintiff further alleges that defendant breached its fiduciary duty to the class members by failing to properly report, account for, and distribute gas to the class members for their proportionate royalty share of gas production.

On January 27, 2015, defendant removed the case to this Court alleging jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"). Subsequently, plaintiff filed this Motion to Remand alleging the Court lacks subject matter jurisdiction.

II. Discussion

Under CAFA, a United States district court may exercise original jurisdiction over a class action if a party shows, "among other things, that 'the matter in controversy exceed[] the sum or value of $5,000,000, exclusive of interest and costs.'"[1] *Frederick v. Hartford Underwriters Ins. Co.*, 683 F.3d 1242, 1245 (10th Cir. 2012) (quoting 28 U.S.C. § 1332(d)(2)).

> The amount in controversy, in turn, is not "the amount the plaintiff will recover," but rather "an estimate of the amount that will be put at issue in the course of the litigation." *McPhail v. Deere & Co.*, 529 F.3d 947, 956 (10th Cir. 2008); *see also Gibson v. Jeffers*, 478 F.2d 216, 220 (10th Cir. 1973) ("The test to determine amount in controversy is not the sum ultimately found to be due, but the sum demanded in good faith.").

*Frederick*, 683 F.3d at 1245. "[A] defendant seeking to remove under CAFA must show that the amount in controversy exceeds $5,000,000 by a preponderance of the evidence." *Id.* at 1246. A removing party may make this showing in several ways, including:

> by contentions, interrogatories or admissions in state court; by calculation from the complaint's allegations[;] by reference to the plaintiff's informal estimates or settlement demands[;] or by introducing evidence, in the form of affidavits from the defendant's employees or experts, about how much it would cost to satisfy the plaintiff's demands. *McPhail*, 529 F.3d at 954 (10th Cir. 2008) (quoting *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 541–42 (7th Cir. 2006)).

*Frederick*, 683 F.3d at 1247. Thus, the removing party is "entitled to present its own estimate of the stakes; it is not bound by the plaintiffs' estimate in the complaint." *Id.* Moreover,

> . . . a plaintiff's attempt to limit damages in the complaint is not dispositive when determining the amount in controversy. Regardless of the plaintiff's pleadings,

---

[1] The parties concede that CAFA's other requirements are met and limit their dispute to CAFA's amount in controversy requirement. Accordingly, the Court will limit its discussion to the amount in controversy dispute.

> federal jurisdiction is proper if a defendant proves jurisdictional facts by a "preponderance of the evidence" such that the amount in controversy may exceed $5,000,000. Once a defendant meets this burden, remand is appropriate only if the plaintiff can establish that it is legally impossible to recover more than $5,000,000.

*Id.* (internal footnote and citations omitted). In addition, a plaintiff's pre-certification stipulations limiting damages sought is not proper as such stipulation cannot bind the class. *See Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1349 (2013) (citing *Smith v. Bayer Corp.*, 131 S. Ct. 2368, 2380 (2011)).

In the case at bar, plaintiff asserts that the Court lacks jurisdiction because CAFA's amount in controversy requirement is not met. Specifically, plaintiff contends that defendant has not provided sufficient evidence in his notice of removal to meet its burden of showing the amount in controversy at the time of removal exceeded $5,000,000. Because defendant has failed to provide the gas leases, business records, and gas contracts, gas analysis and plant statements it used to reach its initial assessment that the matter in dispute is above $5,000,000, plaintiff contends that the Court should remand this case back to the state court for lack of subject matter jurisdiction, or, in the alternative, permit jurisdictional discovery on this issue. The Court disagrees. In *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547 (2014), the United States Supreme Court made it clear that "a defendant's notice of removal need include only a short and plain statement with a plausible allegation that the amount in controversy exceeds the jurisdictional threshold," and need not contain evidentiary submissions. *Dart*, 135 S. Ct. at 554. In the case at bar, defendant provided such a statement in his Notice of Removal and once plaintiff contested defendant's estimate, defendant filed a response brief with evidence and an explanation of how it reached its conclusion. "In such a case, both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy

requirement has been satisfied." *Id.* at 554 (citing 28 U.S.C. § 1446(c)(2)(B)). Thus, the Court declines to remand this case on this basis. The Court also finds that discovery is not necessary as the parties have submitted sufficient evidence for the Court to determine whether CAFA's amount in controversy requirement is met in this case.

Plaintiff next asserts that the amount in controversy is below $5,000,000 because defendant's initial estimated amount[2] improperly includes: (1) interest, (2) attorney fees and expert costs, and (3) certain additional amounts that should be excluded from defendant's estimate. Plaintiff contends these alleged other improper amounts that should be excluded include estimates for (a) non-Sheridian operated wells where Sheridan did not directly pay the royalty owners ("Exclusion A"); (b) royalties held by office of Natural Resources Revenues ("Exclusion B"); (c) royalties held by defendant and its employees, officers, and directors, and royalties owned by any NYSE or NASDA listed company (and subsidiaries) engaged in oil and gas exploration, gathering, processing and marketing ("Exclusion C"); (d) estimates for royalty payments pursuant to leases that expressly and unambiguously authorized all of the deductions taken by defendant ("Exclusion D"); and (e) estimates for lease fuel, nitrogen, helium, and other gas stream constitutes ("Exclusion E").[3] In response, defendant contends that even after removing Exclusions A through C mentioned above the initial estimated amount in damages is reduced only to $4,691,482. In addition, defendant contends that even if the Court agreed with plaintiff's position and further reduced the initial estimate of the amount in controversy to account for Exclusion D, the damages amount still remains the same because there are no leases

---

[2] Defendant asserted that the amount in controversy is well above $5,000,000. Defendant reached this sum by adding together $4,977,600 in damages, $2,074,828 in interest, and 40% for attorney fees.

[3] These exclusions are not specifically labeled in plaintiff's Class Action Petition; the Court is labeling these exclusions simply for reference purposes in this motion.

4

that fit this exclusion.[4] Lastly, defendant asserts that after a further reduction to account for Exclusion E, which defendant contends is improper, the damages amount in controversy still stands at $3,721,797.[5] When adding any of these numbers together with interest and/or attorneys' fees and expert witness fees, defendant contends the amount in controversy easily exceeds $5,000,000.

Having carefully reviewed the parties' submissions, the Court finds that CAFA's amount in controversy requirement is met. The Court first would note that the base damages estimation in this case as asserted by either party, excluding interest, attorneys' fees, and expert witness fees, is below $5,000,000. Thus, whether the jurisdictional requirement threshold has been met depends on whether interest, attorneys' fees and/or expert witness fees are to be included in this estimation. For the reasons set forth below, the Court finds that interest should be included in the calculation of the amount in controversy, thereby bringing the total to $5,234,666.[6]

As noted above, CAFA, by its terms, provides that the amount in controversy shall exceed $5,000,000 exclusive of interest and costs. 28 U.S.C. § 1332 (d)(2). For removal purposes, while the Court determines the issue of the amount in controversy is a federal question to be resolved under federal standards, the Court must look to state law to determine the nature

---

[4] In determining there were no leases that fit Exclusion D, defendant randomly selected 100 legible leases of the approximately 1,450 Beaver County leases of wells it maintains. Plaintiff contends that a random selection of the 100 wells is not sufficient to determine the exclusion plaintiff seeks is not applicable to the rest of the wells. The Court finds plaintiff's position without merit. There are approximately 1,450 wells at issue in this case; thus, under the facts of this case, the Court finds a random sampling of 100 wells is sufficient.

[5] To reach this sum, the Court subtracted the amount of damages for Nitrogen ($84,972), Lease Fuel ($256,979), Carbon Dioxide ($51,024), and Helium ($576,710) from the previous estimated total of $4,691,482.

[6] To reach this sum, the Court took $3,721,797 base damages and added $1,512,869 (12% interest). Having found the amount in controversy requirement is met after adding the base damages and interest, the Court need not consider the parties' assertions regarding the propriety of including attorneys' fees and/or expert witness fees.

5

and extent of the right to be enforced in a diversity case. *See Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348, 352-53 (1961). Further, in determining whether interest should be excluded from the amount in controversy for purposes of jurisdictional analysis, the United States Supreme Court has stated that there is a

> distinction between interest as such and the use of an interest calculation as an instrumentality in arriving at the amount of damages to be awarded on the principal demand . . . . Indeed, the confusion of thought which the assertion of want of jurisdiction involves is a failure to distinguish between a principal and an accessory demand. The sum of the principal demand determines the question of jurisdiction.

*Brown v. Webster*, 156 U.S. 328, 330 (1895). In the case at bar, whether the interest is to be included in the assessment of the amount in controversy for jurisdictional purposes turns on whether the interest sought in plaintiff's complaint is part of a principal demand or an accessory demand. For the reasons set forth below, the Court finds that plaintiff's request for interest falls within his principal demand and, thus, should be included in the amount in controversy.

Under Oklahoma's Energy Litigation Reform Act, the Production Revenue Standards Act ("PRSA"), absent a private agreement, is the exclusive remedy for suits based on underpayment of royalties from gas oil. *See* Okla. Stat. tit. 52, § 903. The PRSA defines actual damages to include a 12% per annum interest on proceeds that are not timely paid. *See* Okla. Stat. tit. 52, § 570.10(D)(1). The PRSA's interest provision is part of the total liability recovered and is compensatory in nature, thereby constituting a part of the judgment, and is to be considered a part of the total liability recovered. *See Hebble v. Shell W. E & P, Inc.*, 238 P.3d 939, 945-946 (Okla. Civ. App. 2010), *cert. denied* (Okla. 2010), *cert. denied* 131 S. Ct. 822 (2010). In addition, a claim need not be brought as a separate claim under the PRSA as the PRSA does not create a statutory claim but is merely a remedy basis. *Id.* at 945.

In this case at bar, plaintiff, in his Class Action Petition, asserts claims for underpayment or non-payment of royalties but does not state a specific amount of damages. Further, while plaintiff contends he has not asserted claims under the PRSA, he brings a claim for underpayment/non-payment of gas royalty payment and requests "damages including, but not limited to, interest at the highest allowable rate[.]" *See* Class Action Petition at 1, 16. He further requests other remedies under the law. *See* Class Action Petition at 16. Thus, the Court finds that, under the facts of this case, the interest alleged in this case should be included in the amount in controversy because plaintiff explicitly requests interest as part of his damages, the language set forth above in plaintiff's Class Action Petition implicates a potential remedy under the PRSA, and the PRSA defines actual damages to include the 12% interest. The Court, thus, treats this interest as part of the principal demand. Therefore, even if the Court is to accept plaintiff's position regarding Exclusions A through E, and adds the 12% interest to the remaining estimated amount of $3,721,797 the amount in controversy may exceed $5,000,000. Accordingly, the Court finds that defendant has shown by a preponderance of the evidence that the amount in controversy in this case *may* exceed $5,000,000. Because plaintiff has not shown that a recovery for that amount is legally impossible, the Court finds that it has subject matter jurisdiction over this matter.

III. Conclusion

For the reasons set forth above, the Court DENIES plaintiff's Motion to Remand [docket nos. 15 and 17].

**IT IS SO ORDERED this 1st day of July, 2015.**

*Vicki Miles-LaGrange*
VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE

7