# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

TONY R. WHISENANT, on behalf of )
Himself and all others similarly situated, )
                                                                    )
                Plaintiffs, )
                                                                )
v. ) Case No. CIV-15-81-M
                                                                )
SHERIDAN PRODUCTION COMPANY, )
LLC, )
                                                                )
                Defendant. )

## ORDER

      Before the Court is Plaintiff's Renewed Motion for Remand and Brief in Support, filed October 13, 2015. On November 3, 2015, defendant responded, and on November 10, 2015, plaintiff replied. Based on the parties' submissions, the Court makes its determination.

I.      Background

      This action was filed on December 16, 2014, in the District Court of Beaver County, State of Oklahoma and stems from plaintiff's allegations of defendant's prior underpayment or non-payment of royalties owed to plaintiff on natural gas and/or constitutes of the gas stream produced from wells in Beaver County, Oklahoma. On February 26, 2015, plaintiff initially filed his motion to remand, and on July 1, 2015, this Court denied plaintiff's motion to remand. The Court ruled that defendant had satisfied the jurisdictional requirements under the Class Action Fairness Act of 2005 ("CAFA"). Specifically, the Court found that the undisputed damages of $3.7 million along with the statutory 12% per annum interest on proceeds that were not timely

paid, pursuant to the Production and Revenue Standards Act ("PRSA"), exceeded the $5,000,000.00 jurisdictional amount required by CAFA.[1]

On August 12, 2015, plaintiff filed his Notice of Appeal, appealing the Court's Order denying his motion to remand to the United States Court of Appeals for the Tenth Circuit. On October 10, 2015, the Tenth Circuit issued its Order and Judgment reversing this Court's Order and remanding this matter back to this Court for further proceedings. Specifically, the Tenth Circuit found that the PRSA's statutory interest provision was the type of interest that 28 U.S.C. § 1332 prohibited the Court from considering. *See Whisenant v. Sheridan Prod. Co., LLC*, 627 F.App'x 706, 709 (10th Cir. 2015). Further, the Tenth Circuit remanded this matter back to this Court for "a determination of whether any amounts other than interest under Oklahoma's Production Revenue Standards Act may be added to the alleged unpaid royalties to satisfy CAFA's amount-in-controversy requirement." *Id.*

Based on the Tenth Circuit's Order, plaintiff now renews his requests to remand this matter back to state court.

II.     Discussion

Under CAFA, a United States district court may exercise original jurisdiction over a class action if a party shows, "among other things, that 'the matter in controversy exceed[] the sum or value of $5,000,000, exclusive of interest and costs.'"[2] *Frederick v. Hartford Underwriters Ins. Co.*, 683 F.3d 1242, 1245 (10th Cir. 2012) (quoting 28 U.S.C. § 1332(d)(2)).

---

[1] Since the Court determined that the PSRA statutory interest applied to plaintiff's claim, the Court did not consider the parties' assertions regarding other disputed potential damages such as attorney or expert witness fees or under/nonpayment of royalties for other constituent gases.

[2] As it was determined in the Court's July 1, 2015 Order, the parties conceded that CAFA's other requirements were met; therefore, the Court will limit its discussion to the amount in controversy dispute.

> The amount in controversy, in turn, is not "the amount the plaintiff will recover," but rather "an estimate of the amount that will be put at issue in the course of the litigation." *McPhail v. Deere & Co.*, 529 F.3d 947, 956 (10th Cir. 2008); *see also Gibson v. Jeffers*, 478 F.2d 216, 220 (10th Cir. 1973) ("The test to determine amount in controversy is not the sum ultimately found to be due, but the sum demanded in good faith.").

*Frederick*, 683 F.3d at 1245. "[A] defendant seeking to remove under CAFA must show that the amount in controversy exceeds $5,000,000 by a preponderance of the evidence." *Id.* at 1246. A removing party may make this showing in several ways, including:

> by contentions, interrogatories or admissions in state court; by calculation from the complaint's allegations[;] by reference to the plaintiff's informal estimates or settlement demands[;] or by introducing evidence, in the form of affidavits from the defendant's employees or experts, about how much it would cost to satisfy the plaintiff's demands. *McPhail*, 529 F.3d at 954 (10th Cir. 2008) (quoting *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 541–42 (7th Cir. 2006)).

*Frederick*, 683 F.3d at 1247. Thus, the removing party is "entitled to present its own estimate of the stakes; it is not bound by the plaintiffs' estimate in the complaint." *Id.* Moreover,

> . . . a plaintiff's attempt to limit damages in the complaint is not dispositive when determining the amount in controversy. Regardless of the plaintiff's pleadings, federal jurisdiction is proper if a defendant proves jurisdictional facts by a "preponderance of the evidence" such that the amount in controversy may exceed $5,000,000. Once a defendant meets this burden, remand is appropriate only if the plaintiff can establish that it is legally impossible to recover more than $5,000,000.

*Id.* (internal footnote and citations omitted). In addition, a plaintiff's pre-certification stipulations limiting damages sought is not proper as such stipulation cannot bind the class. *See Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1349 (2013) (citing *Smith v. Bayer Corp.*, 131 S. Ct. 2368, 2380 (2011)).

Pursuant to the Tenth Circuit's Order remanding this matter back to this Court for further proceedings, the Court finds a determination needs to be made as to whether the amount in controversy should include (1) attorney's/expert witness fees; (2) under/non-paid royalties from

3

other gas stream constituents that defendant asserts plaintiff alleges in his Class Action Petition ("Complaint") were not properly paid [3]; and (3) future accruing damages.

### A. Attorney's/Expert Witness Fees

Oklahoma's Energy Litigation Reform Act ("ELRA") states:

> … except where specific remedies are provided by private agreement, and as long as [Okla. Stat. tit. 52, § 570.10(D)] provides for an interest rate equal to or greater than twelve percent (12%) compounded annually, the [PRSA] shall provide the exclusive remedy to a person entitled to proceeds from production for failure of a holder to pay the proceeds within the time periods required for payment.

Okla. Stat. tit. 52, § 903. Further, the PRSA states:

> The prevailing party in any court proceeding brought pursuant to the Production Revenue Standards Act shall be entitled to recover the costs of the suit, including but not limited to reasonable attorney and expert witness fees.

Okla. Stat. tit. 52, § 570.14(C). The Tenth Circuit has determined that attorney fees may be considered in the jurisdictional amount if a statute allows recovery. *See Woodmen of World Life Ins. Soc'y v. Mangnaro*, 342 F.3d 1213, 1218 (10th Cir. 2003) (citing *Mo. State Life Ins. Co. v. Jones*, 290 U.S. 199, 202 (1933)).

---

[3] In plaintiff's original motion for remand, plaintiff asserted that defendant included amounts in its damages estimate that were improper, these amounts, along with interest and attorney's/expert witness fees, include:
> (a) non-Sheridan operated wells where defendant did not directly pay royalty owners ("Exclusion A"); (b) royalties held by office of Natural Resources Revenues ("Exclusion B"); (c) royalties held by defendant and its employees, officers, and directors, and royalties owned by any NYSE and NASDA listed company (and subsidiaries) engaged in oil and gas exploration, gathering, processing and marketing ("Exclusion C"); (d) estimates for royalty payments pursuant to leases that expressly and unambiguously authorized all of the deductions taken by defendant ("Exclusion D"); and (e) estimates for lease fuel, nitrogen, helium, and other gas stream constitutes ("Exclusion E").

Court's July 1, 2015 Order [docket no. 41] at p. 4.

Plaintiff contends that it is not appropriate to consider statutory attorney fees when determining the amount in controversy since his claim was not pled pursuant to the PRSA but is a common law breach of lease claim in which he seeks attorney's fees out of the recovered damages amount. Defendant contends that, pursuant to the ELRA, the exclusive remedy for plaintiff's claim of under/non-payment of royalties on gas leases is governed by the PRSA.[4]

Having carefully reviewed the parties' submissions, the Court finds that attorney's/expert witness fees, provided by the PRSA, should not be included in the amount in controversy determination, as plaintiff has only pled a breach of lease claim and not a claim pursuant to the ELRA or PRSA. Specifically, the Court finds that plaintiff's claim is based on defendant's alleged breach of the implied covenant of the fully executed oil and gas lease between plaintiff and defendant. *See* Compl. ¶ 44. The Court finds that the executed lease between the parties constitutes a private agreement which the ELRA exempts from the PRSA remedy provision.[5] Therefore, the Court finds that the $2,293,866.00 amount estimated by defendant for attorney's/expert witness fees should not be included in the amount in controversy.

---

[4] Defendant contends that the Court, in its July 1, 2015 Order, determined that the PRSA was the exclusive remedy for plaintiff's claim. The Court finds that this is not so; in the Court's July 1, 2015 Order, the Court stated: "[u]nder Oklahoma's Energy Litigation Reform Act, the [PRSA] . . . , absent private agreement, is the exclusive remedy for suits based on underpayment of royalties from gas oil." Court's July 1, 2015 Order [docket no. 41] at p. 6 (citing Okla. Stat. tit. 52, § 903. The Court, at the time, determined that the nature of plaintiff's claim "implicate[d] a potential remedy under the PRSA," (*id* at p. 7); the Court never determined that the PRSA was the exclusive remedy for plaintiff's claim.

[5] Further, the Court would agree with plaintiff's assertion in his reply, that the correct course of action for defendant would have been to file a Rule 12(b)(6) motion for failure to state a claim for a violation of the ELRA or PRSA and allow the state court to adjudicate the issue of whether plaintiff could bring a breach of lease claim against defendant or whether plaintiff must bring his claim pursuant to the ELRA or PRSA.

B.   Other Gas Stream Constituents – Exclusion E

Defendant now asserts its position that plaintiff, in his Complaint, originally claimed that defendant underpaid or did not pay for on-lease fuel, and gas stream constituents – carbon dioxide, nitrogen, and helium (collectively known as "Exclusion E"); therefore, those under/non-payment claims should be included in the damages amount. Plaintiff contends that since the Court determined that the base damages amount was $3.7 million dollars, and defendant did not appeal that determination, defendant cannot now assert that damages for Exclusion E should be included in the damages amount in determining the amount in controversy.

Having carefully reviewed the parties' submissions, as well as plaintiff's Complaint, the Court finds that the damages amount in Exclusion E should be considered in determining whether the CAFA jurisdictional requirement has been met in this matter. The Court finds that in its July 5, 2015 Order, the Court specifically noted that defendant believed it was improper not to include the damages amount for Exclusion E, and because the Court found that the CAFA jurisdictional amount was satisfied when the PRSA statutory interest amount was added to the undisputed damages amount of $3.7 million, there was no need to address defendant's contentions regarding Exclusion E damages. The Court finds that defendant's contentions as to including the Exclusion E damages were properly preserved to be addressed at a later time if required. Therefore, the Court will consider Exclusion E damages in determining if the CAFA jurisdictional amount of $5,000,000.00 has been met in this matter.

(i).   On-lease fuel deductions

Plaintiff contends that he makes no claim for under payment of royalties for on-lease fuel deductions. Defendant contends that it reasonably understood from plaintiff's Complaint that he was seeking royalty for on-lease fuel use. Having carefully reviewed plaintiff's Complaint, as

6

well as the parties' submissions in this matter, the Court finds that it was reasonable for defendant to believe that plaintiff was alleging that on-lease fuel deductions were a part of his claim of under/non-payment royalties on gas constituents. Plaintiff, in his Complaint, alleges:

> 10. Plaintiff brings this action individually and, pursuant to 12 O.S. § 2023 (A) and (B)(3), as representative of a Class defined as follows:
>> All royalty owners of Sheridan Production Company, LLC, from Oklahoma wells in Beaver County that are or have been operated (or marketed and directly paid to royalty owners) by Sheridan and produced gas (such as residue gas, natural gas liquids, or helium) from January 1, 2009 to the time Class Notice is given.
>
> \*          \*          \*
>
> 12. The questions of fact or law common to Plaintiff and other Class Members include without limitation, one or more of the following:
> (a)   Are Plaintiff and the Other Class Members the beneficiaries of an implied covenant obligating Defendant to place the gas (and its constituents) from Class Wells into "Marketable Condition"?
>
> \*          \*          \*
>
> (d) Did Defendant pay royalty to Plaintiff and the other Class members for all gas constituents, such as fractionated NGLs and helium, produced from their wells?

Notice of Removal [docket no. 1], Exhibit 1, Class Action Petition ¶¶10 & 12(a) & (d). The Court specifically finds that plaintiff made no distinction as to what type of gas he was claiming defendant failed to pay or underpaid the royalties on. Plaintiff specifically stated the nature of the action was "claims based upon Defendant's prior underpayment or non-payment of royalties on natural gas and/or constituents of the gas stream produced from wells in Oklahoma through improper accounting methods, . . . ." *Id.*¶ 1. The Court finds that defendant could have reasonably believed, based on the allegations in plaintiff's Complaint, that the estimated amount

in controversy should include the estimated disputed royalty amount of $256,978[6] for on-lease fuel.

(ii). Nitrogen, Carbon Dioxide, and Helium

Plaintiff further contends that he did not claim he was entitled to royalty payments for the gases nitrogen, carbon dioxide, or helium in his Complaint. Defendant contends that "based on a plain reading of the Petition and common usage of terms in the industry including a general definition of 'gas' to include 'all of the constituents of the raw gas stream,' including helium, nitrogen, and carbon dioxide, [it] believed that plaintiff did allege royalty underpayment for all of these gas constituents." Def. Resp. [docket no. 23] at 19 (citing Mark Humphries Deposition p. 94 ln. 8-14, Exhibit 1 of plf.'s Amended Motion to Remand [docket no. 17]).

Having carefully reviewed plaintiff's Complaint, as well as the parties' submissions in this matter, the Court finds that it was reasonable for defendant to believe that plaintiff was alleging an under/non-payment of royalties for the gases nitrogen, carbon dioxide, and helium. Plaintiff specifically alleges:

> 34. . . . Nitrogen is produced and processed without payment of royalty, and Plaintiff and Class Members are entitled to royalty on nitrogen produced from their wells and used or sold. The same is true of other products, such as Condensate which falls out from cooling on the gathering line.
>
> \*       \*       \*
>
> 39. Defendant underpays Plaintiff and the other Class Members in one or more of the following ways, without limitation:
> (a) Helium. Helium is contained in the well-stream produced from Plaintiffs and most Class Members' wells, but Defendant: (i) fails to pay royalty for all of the helium produced (some is lost and unaccounted for in the gathering process); (ii) deducts processing fees and costs even

---

[6] In its response to plaintiff's initial motion to remand, defendant provided the estimated disputed royalty amounts for Exclusion E gases. *See* Def. Resp. [docket no. 23] at 19.

> though the helium is not yet in commercial grade; and (iii) pays at a lower than commercial Grade A price.

Notice of Removal [docket no. 1], Exhibit 1, Class Action Petition ¶¶34 & 39. Further, in his initial motion to remand, plaintiff conceded that, while defendant did not have an obligation to process and sell products recovered and sold by third parties from the class wells, defendant was required to pay for those products including carbon dioxide and nitrogen when those products were recovered. *See* Amended Motion to Remand [docket no. 17] at 6. Based on plaintiff's allegations and contentions, the Court finds that defendant's estimated disputed royalty amount of $712,706, for the gases nitrogen ($84,972), carbon dioxide ($51,024) and helium ($576,710) should be included in the amount in controversy.

    C.    <u>Future accruing damages</u>

Based on the Court's determination of the disputed royalty amounts that should be included, the amount in controversy stands at $4,691,482.00, which is not enough to satisfy the CAFA jurisdictional requirement of $5,000,000.00. Defendant contends that plaintiff seeks to recoup the under/non-paid royalties beyond the date plaintiff filed his Complaint and, therefore, the amount of future accruing damages should be included in the amount in controversy. Specifically, defendant contends that plaintiff alleges the time period for recoupment of damages is from January 1, 2009 to the time Class Notice is given. Defendant contends that since the Court has set the date for oral arguments on class certification for November 11, 2016, notification of the class cannot occur before this date. As a result, defendant contends that the estimated disputed royalty amount that would accrue up until class notification would be $39,562.20 per month. Based on this monthly accrual, defendant contends that the CAFA jurisdictional requirement of $5,000,000.00 would have been reached by the end of September 2015, well far in advance of the potential date for notification of the class. Plaintiff contends that

the amount in controversy should be assessed at the time of removal and that defendant cannot include damages that have yet and may never accrue.[7]

"[T]he time-of-filing rule [requires] the district court [to] determine the jurisdictional facts as they are when the complaint is filed, not as they might be upon final judgment." *Symes v. Harris*, 472 F.3d 754, 758 (10th Cir. 2006). Further, "[o]ngoing damages demanded in the plaintiff's complaint are part of the state of the facts at the time of filing of the complaint." *Sullivan One, LLC v. Silver Cinemas Acuisition Corp.*, No. 13-CV-01998-CMA-CBS, 2014 WL 503644, at 2 (D. Colo. Feb. 7, 2014) (citing *Carrillo v. MCS Indus. Inc.,* No. 12-0573, 2012 WL 5378300, at 16 (D.N.M. Oct. 15, 2012)).

Having carefully reviewed plaintiff's Complaint, as well as the parties' submissions, the Court finds that future damages for the non/under royalty payments by defendant should be included in the amount in controversy. Plaintiff specifically defines the potential class and period for damages recoupment in this matter as:

> All royalty owners of Sheridan Production Company, LLC, from Oklahoma wells in Beaver County that are or have been operated (or marketed and directly paid to royalty owners) by Sheridan and produced gas (such as residue gas, natural gas liquids, or helium) from January 1, 2009 to the time Class Notice is given.

Notice of Removal [docket no. 1], Exhibit 1, Class Action Petition ¶10. The Court finds that it was plaintiff's intention that damages would accrue in this action from January 1, 2009 until the class was given notice. At the time plaintiff filed this action, plaintiff was unaware of the date the class would be given notice and, further, specifically pled that "[he] [did] not know whether

---

[7] Plaintiff further contends that even if defendant can consider future damages, based on the amount in controversy amount of $3,721.797, it would take approximately three years, well past the class notification date, for the CAFA jurisdictional requirement to be met. However, the Court has already determined that the amount in controversy stands at $4,691,482.00, not including the potential future damages amount.

class-wide damages [would] exceed $5 million, exclusive of interest and cost." *Id*. The Court finds that based on plaintiff's pleading, it was reasonable for defendant at the time of removal to determine that the amount in controversy would include damages up until the time the class was given notification, which would exceed the CAFA jurisdictional requirement of $5,000,000.00. Therefore, since defendant has established by a preponderance of the evidence that the amount in controversy in this matter could exceed $5,000,000.00, the Court finds that this matter should not be remanded back to state court.

III.	Conclusion

Accordingly, for the reasons set forth above, the Court DENIES Plaintiff's Renewed Motion for Remand and Brief in Support [docket no. 55].[8]

**IT IS SO ORDERED this 23rd day of September, 2016.**

VICKI MILES-LaGRANGE
UNITED STATES DISTRICT JUDGE

---

[8] This matter will be set on the Court's next available Status and Scheduling Conference Docket.